# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:09-CV-207-FDW-DCK

DUANE S. CARSON,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )          **ORDER**
                                    )
MICHAEL ASTRUE,                     )
**Commissioner of Social Security,**)
                                    )
            Defendant.              )
_____)

**THIS MATTER** is before the Court on Plaintiff's "Motion For Summary Judgment" (Doc. No. 10) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Doc. No. 11), filed October 29, 2009; and Defendant Commissioner's "Motion For Summary Judgment" (Doc. No. 12) and Defendant's "Memorandum In Support Of Summary Judgment" (Doc. No. 13), filed December 30, 2009.

After careful consideration of the written arguments, administrative record, and applicable authority, the Court DENIES Plaintiff's Motion For Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. Accordingly, the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff Duane S. Carson ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. On September 9, 2004, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 301, *et seq.*, ("the Act") alleging an inability to work due to a disabling condition beginning January 1, 2004. (Transcript of the Record of Proceedings ("Tr.") 14). Plaintiff's application was denied initially on December 3, 2004, and again

upon reconsideration on April 19, 2005. (Tr. 36-37, 40-41). Plaintiff filed a timely written request for a hearing on May 25, 2005. (Tr. 43). On August 21, 2007, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard H. Harper ("ALJ"). (Tr. 432-457). On or about November 15, 2007, the ALJ issued a decision denying Plaintiff's claim. (Tr. 11-25).

Plaintiff filed a request for review of the ALJ's decision on March 27, 2009, which was denied by the Appeals Council. (Tr. 3-5). The November 15, 2007 decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request on March 27, 2009. (Tr. 3).

Plaintiff, who has exhausted his administrative remedies, filed this action on May 26, 2009 and the pending motions are now ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), grants this Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." § 405(g). It is this Court's duty to determine both whether the Commissioner's findings are "supported by substantial evidence and whether the correct law was applied." Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing Perales, 402 U.S. at 401). The Fourth Circuit has recognized "it is not within the

province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. The Court may set aside a determination of the ALJ if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" for the purposes of the Act, at any time between January 1, 2004, and June 30, 2006, Plaintiff's date last insured. "Disability," as defined by the Social Security Act, is the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . . An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy. . . .

42 U.S.C. § 423(d)(1)(A), (d)(2)(A).

On November 15, 2007, the ALJ found that Plaintiff was not under a "disability" within the meaning of the Act for the period between January 1, 2004, the alleged date of disability onset, and June 30, 2006, the date of last insured. (Tr. 15). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. See 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ is directed to consider the claimant's condition at each step; if he is able to make a conclusive determination as to the claimant being disabled or not disabled, his analysis ends. If, however, the ALJ cannot make a determination, he moves to the next step. Id. at § 404.1520(a)(4). In this case, the ALJ determined at the fifth and final step that Plaintiff was not disabled. (Tr. 24).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity after his alleged disability onset date. (Tr. 16). At the second step, the ALJ found that Plaintiff suffered from non-ischemic cardiomyopathy with a history of currently well-compensated congestive heart failure with New York Heart Association ("NYHA") Classification I-II symptoms; a history of gout; obesity, and hypertension, constituting "severe" but non-disabling impairments.[1] (Tr. 16-17). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

---

[1] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that he retained the capacity to perform a "wide range"[2] of light and sedentary work activity, with the following limitations:

- lifting and carrying 20 pounds occasionally and 10 pounds frequently;
- standing and walking for six hours in an eight hour;
- sitting for up to six hours out of an eight hour day;
- avoiding exposure to workplace hazards such as moving machinery and heights.

(Tr. 21).  In making his finding, the ALJ determined Plaintiff's testimony regarding his pain and functional limitations were inconsistent with the medical and non-medical evidence of record for the pertinent period on and prior to June 30, 2006 and that Plaintiff's allegations were not fully credible.  (Tr. 22-23).  At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work.  (Tr. 23).

At the fifth and final step, if a claimant has established that he cannot perform his past relevant work because of his impairments, the burden shifts to the Commissioner to show whether, in light of his medically determinable impairments, functional limitations, age, education and work experience, there are other jobs that he can perform which exist in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1520(g) and 404.1560(c)(1-2).  Considering these factors, and the Medical Vocational Guidelines in 20 CFR Part 404, Subpart P, Appendix 2, and the adjudicatory guidance of SSRs 83-12, 83-14, and 85-15, the ALJ found that Plaintiff could perform a full range of light work.  (Tr. 24).  Further, the ALJ determined that given Plaintiff's age,

---

[2]Later in his decision, the ALJ commented that Plaintff retained the ability to perform the "full range" of light work.  (Tr. 24).  To the extent the ALJ implied a "wide range" to impose a limitation on Plaintiff's ability to perform light and sedentary RFC, the Court considers the ALJ's finding that Plaintiff should avoid moving machinery and heights to be the only limitation, as the ALJ mentions no other limitations on Plaintiff's ability to perform at the prescribed RFC.

education, and work experience, Plaintiff was capable of adjusting to other work, of which there were jobs that existed in significant numbers in the national economy. (Tr. 24). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between January 1, 2004, and June 30, 2006, the date last insured. (Tr. 24).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to accord adequate weight to the treating physician's opinion; (2) the ALJ failed to obtain the testimony of a vocational expert; (3) the ALJ's RFC finding failed to include a function-by-function assessment of Plaintiff's capabilities; (4) the ALJ improperly considered the evidence regarding Plaintiff's failure to maintain treatment; (5) the ALJ failed to properly evaluate Plaintiff's obesity; and (6) the ALJ failed to properly evaluate Plaintiff's subjective complaints and credibility. (Doc. No. 11). The Court will address these issues in turn.

## A. <u>Weight Given To Physicians' Testimony</u>

In his first assignment of error, Plaintiff argues that the ALJ erred by failing to give the medical opinion of Plaintiff's treating physician, Dr. Tamilarasi Kannan, adequate weight when considering Plaintiff's RFC. (Doc. No. 11 at 9-13). Specifically, Plaintiff argues that the regulations promulgated by the Commissioner require the opinion of treating physicians to be accorded "controlling" weight when assessing a claimant's impairments, and that the ALJ erred by relying instead on the treating notes of Dr. Sanjay Patel, Plaintiff's cardiac specialist, and the Meridian Medical Group. (<u>Id.</u> at 10-11). The Court disagrees.

The Commissioner's regulations provide that the medical opinions of treating sources are to be afforded "controlling weight" where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In reaching his conclusion that Plaintiff's RFC allowed him to do light and sedentary work, the ALJ considered the medical opinions presented by a number of physicians, including Dr. Kannan, Dr. Patel, and the treatment notes of the Meridian Medical Group, written by Dr. Kannan. (Tr. 18-23). Although Dr. Kannan found that Plaintiff was "unable to perform a substantial range of any gainful work activity, including a substantial range of sedentary work," in a medical questionnaire completed at Plaintiff's counsel's request (Tr. 21), the ALJ recognized that "the treatment notes from Meridian and Dr. Patel do not establish that prior to June 30, 2006, [Plaintiff's] impairments reasonably were capable of causing the degree of severity opined in Dr. Kannan's ... questionnaire." (Tr. 21).

Where there are inconsistent medical opinions contained in a claimant's case record, the ALJ is not required to give controlling weight to the treating source opinion. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight. The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence . . . ." (internal citations omitted)); see also Craig, 76 F.3d 585 (4th Cir. 1996) (holding the ALJ did not err in giving diminished weight to a treating source opinion that was based solely on the plaintiff's subjective reports of pain and not supported by the treating physician's own medical notes); cf. Mitchell v.

Schweiker, 699 F.2d 187 (4th Cir. 1983) (holding the ALJ erred in failing to give controlling weight to the treating source opinion where the record contained a unanimous prognosis devoid of any contrary medical evidence).

Where, as here, the treating source opinion is not afforded controlling weight, the ALJ should consider a number of factors in weighing the opinion in question. See 20 C.F.R. § 404.1527(d). For example, the ALJ should consider the length of the treating relationship and the frequency of examination as well as the nature and extent of the treating relationship. § 404.1527(d)(2)(i-ii). Additionally, the ALJ should consider the supportability of the opinion rendered, the consistency of the opinion within the record as a whole, and the specialization of the treating physician. § 404.1527(d)(3-6). Ultimately, the determination of whether or not a claimant is "disabled" and his RFC is "reserved to the Commissioner," and not to the treating physicians. § 404.1527(e); SSR 96-5p. "Treating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p.

Here, there is substantial evidence in the record to support the ALJ's determination to give greater weight to Dr. Patel's and Dr. Kannan's own Meridian Medical Group treatment notes. The ALJ recognized Plaintiff's numerous impairments and long medical history, including a history of hypertension, obesity, and congestive heart failure among other maladies. (Tr. 16-17). However, the ALJ noted improvement in Plaintiff's condition as reported by Dr. Patel. (Tr. 19). For example, Dr. Patel reported that Plaintiff's cardiac markers were "negative for significant abnormalities" and that Plaintiff appeared "well compensated from the cardiovascular standpoint." (Tr. 19, 337-339). Dr. Patel also found that Plaintiff was fairly active, able to walk for up to one mile daily without

difficulty, and had no symptoms of chest discomfort, or lightheadedness or any exertional symptoms. (Tr. 337). Additionally, Dr. Patel found Plaintiff to have good muscle tone and strength and clear lungs. (Tr. 197). Meridian Medical Group came to similar findings (Tr. 148, 152, 154, 162, 163, 166, 169, 180, 242, 244, 335, 340, 349, 359). After reviewing these treatment notes, the ALJ determined that Dr. Kannan's assessment of Plaintiff's capabilities was contradicted by other medical evidence, finding instead that Dr. Patel's and the Meridian Medical Group notes "clearly established that . . . [Plaintiff's] impairments have not prevented him from performing [a] . . . wide-range of light and sedentary work on a regular and sustained basis." (Tr. 21).

Although the ALJ is directed to give controlling weight to a treating source's medical opinion, he may give it diminished weight where the opinion is contradicted by other medical evidence contained in the record. In this case, there is sufficient evidence contained in the record to allow the ALJ to reach his conclusion that Dr. Kannan's opinion "is not persuasive of the ultimate issue of 'disability.'" (Tr. 21). In short, substantial evidence appears to support the weight given by the ALJ to the opinion of Dr. Kannan.

### B. **Vocational Expert Testimony**

Next, Plaintiff argues that the ALJ erred in failing to secure testimony from a Vocational Expert ("VE" or "expert") in Plaintiff's August 21, 2007 administrative hearing, despite Plaintiff suffering from a number of nonexertional impairments.[3] (Doc. No. 11 at 13-16). The expert was apparently notified of the hearing and requested to attend, (Doc. No 11-2), but failed to do so and

---

[3] The Commissioner defines a "nonexertional impairment" as: "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." SSR 83-10; see also 20 C.F.R. § 404.1569a(c).

the ALJ continued with the hearing as scheduled.  (Doc. No. 11 at 13).  Plaintiff thus argues that the Commissioner failed to carry his burden of demonstrating that Plaintiff could perform a significant number of jobs in the national economy.  (Doc. No. 11 at 16).

In Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983), the Fourth Circuit held that if the plaintiff is able to "demonstrate the presence of nonexertional impairments, the [Commissioner], in order to prevail, must be required to prove by expert vocational testimony that . . . specific jobs exist in the national economy which [the plaintiff] can perform."  In that case, the plaintiff suffered from a combination of both exertional and nonexertional limitations.  699 F.2d at 191.  The Fourth Circuit noted that "the regulations themselves specifically provide that where the claimant's impairment is nonexertional . . . or is marked by a combination of exertional and nonexertional impairments the [medical] grids' Rules [found at 20 C.F.R. Part 404, subpart P, App. 1] are not conclusive, and full individualized consideration must be given to all relevant facts of the case."  Id. at 192 (citing 20 C.F.R. Part 404, subpart P, App. 2 § 200.00(a), (d)-(e); 20 C.F.R. § 404.1569).  The Fourth Circuit found the ALJ erred by relying on the grids instead of soliciting the testimony of a VE before finding the plaintiff not disabled.  Id.  Of the burden of proof required of the Commissioner in the fifth step of the sequential process, the court said:

> The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. *To the extent that nonexertional impairments further limit the range of jobs available to the claimant*, the grids may not be relied upon to demonstrate the availability of alternative work activities. Instead, in such cases the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy.

Id. (emphasis added) (citing Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975)).

The year after Grant was decided, the Fourth Circuit clarified its holding in Smith v. Schweiker, 719 F.2d 723 (4th Cir. 1984). Specifically, the court recognized that "[a]lthough Grant makes clear that reliance on the grids is precluded where the claimant suffers from a 'nonexertional impairment,' *not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment*.'" 719 F.2d at 725 (emphasis added). Instead, the requirement of Grant that vocational expert testimony be necessary to satisfy the Commissioner's burden only applies where "a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Id. "Whether a given nonexertional condition affects a particular claimant's residual capacity to engage in certain job activities is a question of fact." Id.

Thus, in the case at bar, the ALJ was not required to hear the testimony of a vocational expert and could instead make a finding as to Plaintiff's disability based on the medical grids if Plaintiff's nonexertional *conditions* did not raise to the level of a nonexertional *impairment*, a determination this Court will leave undisturbed provided it is supported by substantial evidence. See, e.g., id. (recognizing it was not improper for the ALJ to rely on the grids in finding the plaintiff was not disabled where there was substantial evidence to support the ALJ's determination that the plaintiff's nonexertional condition "did not affect his capacity to perform sedentary work"); Goard v. Shalala, No. 92-1397, 1993 WL 171248 at *2 (4th Cir. May 21, 1993) (unpublished opinion) (same).

Here, the ALJ found that Plaintiff suffered from a number of nonexertional limitations including complications from gout, dizziness, shortness of breath, and instances of renal insufficiency and dyslipidemia in addition to the exertional impairments of congestive heart failure, hypertension, and obesity. (Tr. 17–18). These nonexertional limitations contributed to the ALJ determining that Plaintiff was incapable of performing his past relevant work and instead was

limited to a RFC of light and sedentary work. (Tr. 20-21). However, the ALJ determined that Plaintiff failed to establish that his nonexertional symptoms had any further affect on his ability to perform the light and sedentary work he was otherwise exertionally capable of performing. (Tr. 18-23, 24); see Smith, 719 F.2d at 725.

In fact, the only limitation placed by the ALJ on Plaintiff's RFC was to avoid working around moving machinery and heights due to adverse medication side effects. (Tr. 21). The regulations note that certain limitations on environmental working conditions may give rise to a nonexertional impairment. See SSR 83-14. However, the regulations do not consider the type of restriction placed on Plaintiff by the ALJ to be a nonexertional impairment. Id. ("In other cases, functional ability may not be impaired by an environmental restriction (e.g., a person may be able to do anything so long as he or she is not near dangerous moving machinery, on unprotected elevations, or in contact with certain substances to which he or she is allergic)").

Even assuming, *arguendo*, this restriction is a nonexetional impairment, the ALJ found that Plaintiff's "additional nonexertional limitations had little or no effect on the occupational base of unskilled light work." (Tr. 24). This finding appears to be supported by substantial evidence. In reaching his conclusion, the ALJ carefully considered the case record, including the treatment notes of Dr. Patel, the Meridian Medical Group, and a number of vocational doctors including Dr. Tyler I. Freeman, and State Agency Medical Consultants Dr. Charles Burkhart and Dr. J. Pitt Tomlinson. (Tr. 17, 18-23). The vocational doctors all recommended that Plaintiff be given an RFC of medium work, which the ALJ found convincing, but found it necessary to add more restrictions to Plaintiff's RFC, limiting him to light and sedentary work given Plaintiff's administrative hearing testimony regarding pain and other symptoms. (Tr. 20). The ALJ also thoroughly examined the regulations

governing RFCs and determined that, based on Plaintiff's medical symptoms and history, he was still capable of performing the "full range" of light work, including sedentary work. (Tr. 20-21, 24).

Consistent with the holding of Smith, the ALJ did not act improperly by relying on the medical grids to find Plaintiff suffered no disability, since Plaintiff failed to demonstrate how his nonexertional limitations affected his ability to do light and sedentary work. Accordingly, the ALJ did not err in failing to secure the testimony of the vocational expert. Because the ALJ determined that Plaintiff's nonexertional limitations did not limit him from performing a "full range" of light and sedentary work, the Commissioner was not required to secure a vocational expert to carry his burden of proof that other jobs existed in significant numbers in the national economy that Plaintiff was capable of performing.

### C. Residual Functional Capacity Assessment

Plaintiff next argues that the ALJ failed to include a function-by-function assessment of Plaintiff's limitations in determining his RFC, as required by SSR 96-8p. (Doc. No. 11 at 16). The Court is unconvinced that the ALJ failed to follow the regulations as promulgated by the Commissioner in reaching its conclusion.

In weighing a claimant's RFC, the regulations require that the ALJ "consider all allegations of physical and mental limitations and restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p. The ALJ is directed to consider "*all* of the relevant evidence in the case record," including, by way of example, the claimant's medical history and symptoms and laboratory findings, the effects of treatment, reports of daily activity, recorded observations, medical source statements, and objective effects of symptoms. Id. (emphasis included). Although the RFC itself is expressed abstractly in terms of exertional level

of work such as "sedentary, light, medium, heavy, and very heavy," the ALJ is required to make a finding of the claimant's ability to do each function described in the RFC (e.g. "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), based on the claimant's exertional and nonexertional limitations. SSR 96-8p; 20 C.F.R. § 404.1545(b)-(d).

It is not evident from Plaintiff's Memorandum where exactly the ALJ erred in applying these regulations; Plaintiff only makes a conclusory statement that "[t]he ALJ failed to meet this requirement as he did not perform such an analysis when making his determination as to [Plaintiff's RFC]." (Doc. No. 11 at 18). On the contrary, the ALJ considered "all allegations of physical . . . limitations or restrictions and [made] every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p. A review of the ALJ's RFC assessment reveals it is based on a thorough examination of Plaintiff's condition and ability to perform each work-activity function of light and sedentary work.

First, the ALJ's RFC assessment is based on the relevant evidence in the case record, as directed by the regulations. SSR 96-8p. The ALJ begins by referencing Plaintiff's persistent medical ailments, including gout, hypertension, and "consistent reports of obesity." (Tr. 18). The ALJ notes that the severity of these ailments has been exacerbated by "the claimant's frequent failure to take his medications and/or comply with dietary instructions as prescribed by his treating doctors." (Tr. 18). This conclusion is derived from a review of Dr. Patel's treating notes (Tr. 216), and progress notes taken by Meridian Medical Group which reveal Plaintiff was "reluctant to get free meds." (Tr. 154).

Additionally, the ALJ recognizes that Plaintiff suffered from a history of congestive heart failure and non-ischemic cardiomyopathy, but was satisfied that "the claimant's symptoms

associated with these impairments have been closely monitored and well controlled by Dr. Patel."
(Tr. 19, 201, 202, 208). The ALJ noted that even after an incident in April 2006 in which Plaintiff
suffered from shortness of breath and dizziness after doing yard-work in the sun without taking his
medication, his cardiac health did not appear to be grave. (Tr. 19, 283, 285, 291). Finally, the ALJ
considered Plaintiff's subjective allegations of pain made at the administrative hearing and
determined, after comparing the allegations to the medical evidence contained in the record, that
Plaintiffs alleged symptoms and functional limitations were not fully credible. (Tr. 22-23).

Furthermore, in determining Plaintiff's RFC, the ALJ did a complete function-by-function
analysis of Plaintiff's exertional limitations, as required by SSR 96-8p. Although the regulations
require the ALJ to consider each work function in determining RFC, there is no requirement that the
ALJ's decision be expressed in a function-by-function statement. See, e.g., Knox v. Astrue, 327
Fed.App'x. 652, 657 (7th Cir. 2009) ("the expression of a claimant's RFC need not be articulated
function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions
is sufficient"); Depover v. Barnhart, 349 F.3d 563, 567-78 (8th Cir. 2003) (holding that absence of
function-by-function statement did not require remand where the RFC assessment included implicit
findings that the claimant was not limited in certain functions).

Here, the ALJ considered evidence from several vocational doctors that did consultative
examinations, including Dr. Burkhart, Dr. Tomlinson, and Dr. Freeman. (Tr. 20). Dr. Burkhart, for
example, found that Plaintiff could occasionally lift and/or carry 50 pound; frequently lift and/or
carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour day; sit for a total of 6
hours in an 8-hour day; and could push and pull up to 50 pounds occasionally and 25 pounds
frequently. (Tr. 232). The ALJ also included Dr. Freeman's conclusion that Plaintiff retained the

ability to "sit, stand, move about, lift, carry and handle objects in the workplace as in the past," in his findings. (Tr. 20)  Additionally, Plaintiff's RFC, by definition, contemplates his ability to do the prescribed functional work activity for an ordinary work week, that is, eight hours per day for five days per week.  SSR 96-8p.  Thus, when the ALJ determined that Plaintiff was "capable of occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds or less, standing/walking for up to 6 hours during a typical 8-hour workday, and sitting for up to 6 out of 8 hours" (Tr. 21), he implicitly found that Plaintiff was capable of performing each of those functions for up to eight hours per day, five days per week. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

The Court is unconvinced that the ALJ failed to heed the regulations when assessing Plaintiff's RFC.  Instead, it is evident the ALJ carefully weighed all the evidence presented in the record and all of the impairments alleged by Plaintiff.  In short, the RFC assessment is supported by substantial evidence and was rendered in conformity with the regulations.

### D.  Failure to Maintain Treatment

Plaintiff also argues that the ALJ erred by drawing an adverse inference about Plaintiff's failure to maintain treatment in order to discredit Plaintiff's allegations of symptoms and functional limitations.  (Doc. No. 11 at 19).  Plaintiff argues that the regulations prohibit the ALJ from commenting on a claimant's "'failure to seek or pursue regular medical treatment' without first considering the evidence of record which may explain 'infrequent or irregular medical visits or failure to seek medical treatment.'" (Doc. No. 11 at 19 (quoting SSR 96-7p)).  The Court disagrees with Plaintiff's characterization of the ALJ's application of Plaintiff's medical treatment history in his decision.

Social Security Ruling 96-7p, which Plaintiff cites for the proposition that the ALJ used Plaintiff's failure to maintain treatment inappropriately, is principally concerned with how to assess the credibility of a claimant's subjective claims of symptoms and functional limitations. Specifically, the regulation directs ALJs to consider a claimant's medical treatment history by recognizing "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of . . . symptoms for the purposes of judging the credibility of the individual's statements." SSR 96-7p. The regulations also explicitly recognize that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Id.

As Plaintiff notes, the ALJ is prohibited from "draw[ing] any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id. Such explanations may give insight into a claimant's credibility. Id. Among the explanations cited as examples, the regulations recognize that a claimant "may be unable to afford treatment and may not have access to free or low-cost medical services." Id.

Here, the ALJ considered Plaintiff's failure to maintain treatment for a proper purpose when he determined that Plaintiff's "allegations of pain and functional limitations . . . are not fully credible." (Tr. 22-23). The ALJ followed the regulations found in SSR 96-7p and considered Plaintiff's explanation for failing to comply with the prescribed course of treatment before making

a determination as to Plaintiff's credibility. The ALJ noted that "the claimant was having a flare of gout and elevated blood pressure after having ran out of his medications because of a lack of finances." (Tr. 18). However, the ALJ also noted that even "after the claimant was given medication samples and instructions on how to get free medications on his own, he reportedly appeared reluctant to comply with his treating physician's advice in this regard." (Tr. 18, 154).

The ALJ also recognized that Plaintiff's symptoms and limitations "no doubt have been exacerbated by the claimant's frequent failure to take his medications and/or comply with dietary instructions as prescribed by his treating doctors." (Tr. 18). Plaintiff argues that the ALJ erred by denying Plaintiff benefits based on his failure to follow the prescribed treatment. (Doc. No. 11 at 20-21).

The regulations allow the ALJ to deny benefits for failure to maintain treatment where the claimant would otherwise be found disabled and where no good reason for the failure is given. 20 C.F.R. § 404.1530; SSR 82-59. However, the ALJ did not deny benefits for Plaintiff's failure to follow his prescribed treatment but instead found Plaintiff to be not disabled after a thorough consideration of the record at each step of the five step sequential process. (Tr. 16-25). As the Commissioner argues in his Memorandum in Support of Summary Judgment, "the ALJ did not purport to deny Plaintiff benefits on the basis that he failed to follow the prescribed treatment." (Doc. No. 13 at 11 n.3). In fact, the ALJ found Plaintiff to be capable of performing light and sedentary work despite the exacerbated nature of his symptoms and limitations resulting from his failure to maintain treatment. (Tr. 18).

The ALJ's assessment of Plaintiff's credibility, based on Plaintiff's failure to maintain medical treatment is supported by substantial evidence. It was also done in conformity with the

regulations.

### E. **Obesity Evaluation**

Next, Plaintiff argues that the ALJ erred by failing to "discuss [obesity's] impact on [Plaintiff's] residual functional capacity" after finding Plaintiff's obesity to be a "severe" impairment. (Doc. No. 11 at 21). Specifically, Plaintiff argues "[t]he ALJ makes the statement that he carefully considered [Plaintiff's] obesity and concludes it had no effect on his ability to do light and sedentary work yet fails to state how it was considered." (Doc. No. 11 at 21). The Court, however, finds that the ALJ did consider Plaintiff's obesity in determining his RFC to the extent required by the regulations.

The ALJ found that Plaintiff's obesity was a "severe" but non-disabling impairment. (Tr. 16). In order to move beyond the second step of the sequential process, a claimant must have a "severe" impairment, defined as "any impairment or combination of impairments which significantly limits your physical or mental ability do basic work activities." 20 C.F.R. § 404.1520(c). By finding Plaintiff's obesity to be "severe," the ALJ was required to consider this impairment at each subsequent step in the sequential process. SSR 02-01p.

In assessing RFC, the ALJ is only required to consider those impairments that actually limit a claimant's ability to do work functions. See SSR 96-8p; Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) (holding the ALJ adequately considered the plaintiff's obesity implicitly in the RFC determination where there was no evidence in the record of any functional limitations resulting from the obesity). Aside from the limitations giving rise to a determination that Plaintiff's obesity is "severe," the record does not contain any evidence of additional limitations that would compel the ALJ to make an explicit finding that Plaintiff's obesity impacted his RFC. Instead, the ALJ found

that Plaintiff's obesity did not limit his work functions:

> In reaching the . . . conclusion as to [Plaintiff's] work-related limitations on and prior to June 2006, the Administrative Law Judge carefully considered the impact of [Plaintiff's] obesity relative to the combined severity of his other impairments . . ., but his treating source medical records do not reflect that his weight caused any further limitations than those [other impairments].

(Tr. 21). Indeed, the only medical evidence concerning obesity found in the record is diagnoses of obesity (Tr. 161, 196, 198, 203, 215, 216, 251, 323, 327, 338, 344, 369, 375, 380, 286, 406, 414) and findings that Plaintiff was obese upon examination (Tr. 190, 191, 197, 200, 216, 254, 264, 267, 322, 327, 338, 268, 375, 380, 406). (Doc. No. 13 at 19). Additionally, none of the consulting vocational doctors found that Plaintiff's obesity created limitations on his work-related functions. (Tr. 189-191, 232-238, 227).

Where there appears to be no evidence in the record demonstrating how a claimant's obesity limits his functioning, the burden is on the plaintiff to demonstrate how the ALJ failed to consider the impact of the impairment on RFC. See Prochaska, 454 F.3d at 736 (requiring the plaintiff to set forth functional limitations that are not otherwise contained in the record); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (holding the ALJ did not err by failing to include an explicit consideration of obesity where the plaintiff failed to specify how it impacted his ability to work). Plaintiff fails to carry his burden as he gives no indication whatsoever of which limitations stemming from obesity the ALJ failed to consider.

There is substantial evidence to support the ALJ's finding that obesity did not further affect Plaintiff's ability to do light and sedentary work. Accordingly, the ALJ did not err by "fail[ing] to state how [Plaintiff's obesity] was considered" in assessing Plaintiff's RFC.

## F.  Plaintiff's Subjective Complaints and Credibility

Finally, Plaintiff argues that the ALJ erred in only "summarily conclud[ing]" that Plaintiff's allegations of symptoms and functional limitations at the administrative hearing were not fully credible.  (Doc. No. 11 at 22).  Plaintiff contends that "such a conclusory credibility finding violated SSR 96-7p."  (Doc. No. 11 at 22).  At the administrative hearing, Plaintiff alleged that he suffered from pain and swelling in multiple joints, shortness of breath, adverse side effects from his medication, and experienced "great difficulty in trying to lift/carry the lightest of objects or when attempting to stand/walk or sit for even minimal periods of time."  (Tr. 22).  These symptoms rendered it nearly impossible for Plaintiff to help around the house and required that he receive assistance bathing and dressing.  (Tr. 23).

As noted above, SSR 96-7p is principally concerned with assessing the credibility of a claimant's subjective allegations of pain and other symptoms that would affect their functional limitations.  See also 20 C.F.R. § 404.1529. In addition to medical treatment history, discussed above, in weighing the credibility of a claimant's statements about symptoms ALJs are also directed to consider "all of the evidence in the case record," including:

> [m]edical signs and laboratory findings; [d]iagnosis, prognosis and other medical opinions provided by treating or examining physicians . . . ; and [s]tatements and reports from the individual and from treating or examining physicians . . . about the individual's medical history . . . , daily activities, and other information concerning . . . how the symptoms affect the individual's ability to work.

SSR 96-7p.  Additionally, ALJs are directed to weigh a claimant's statement for consistency, both internally and with extrinsic evidence found in the case record, and to view a claimant's statements

in light of the surrounding medical evidence.  Id.  Finally, the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Id.

Contrary to Plaintiff's assertions, the ALJ properly weighed the evidence contained in the record to determine the credibility of Plaintiff's allegations of symptoms and limitations.  The ALJ also made clear findings as to his credibility determination and the rationale for such decision.  For example, the ALJ found that Plaintiff's allegations were "inconsistent with the medical and non-medical evidence of record."  (Tr. 22).  The ALJ noted that Plaintiff's alleged need for assistance in dressing and bathing and his purported inability to perform basic household chores were disproportional to the severity of his impairments as reported throughout the record.  (Tr. 23).  Additionally, the ALJ found Plaintiff's allegations to be internally inconsistent when the ALJ noted Plaintiff had sought treatment for staying in the sun doing yard-work without his medication for several hours, indicating he "was capable of engaging in a wider range of daily activities than he alleged at the [administrative] hearing."  (Tr. 23).

The ALJ also considered Plaintiff's medical signs and laboratory findings, such as echocardiogram results (Tr. 19), treatment notes from a cardiac catheterization procedure (Tr. 19), polysomnograms that revealed sleep apnea (Tr. 17), an exercise stress-test (Tr. 19), electrocardiogram results (Tr. 19), and treatment notes that revealed his blood-pressure was fairly well controlled and that his gout had not resulted in any redness or swelling of his joints and that his grip strength was only mildly diminished.  (Tr. 18-19).

The ALJ weighed the diagnoses and prognoses and medical opinions provided by treating and

consulting sources, noting specifically that Plaintiff had been diagnosed with gout, hypertension, sleep apnea, obesity, congestive heart failure, and non-ischemic cardiomyopathy. (Tr. 17-19). The ALJ considered the opinions of Drs. Freeman, Tomlinson, and Burkhart, who all determined that Plaintiff "retained a modified medium RFC." (Tr. 20).

The ALJ also considered Plaintiff's medical history and the fact that Dr. Patel had documented improvement in Plaintiff's condition and that he was "well compensated from the cardiovascular standpoint . . . ." (Tr. 19). Dr. Patel also found that Plaintiff was "doing well" and was able to walk for up to a mile per day without difficulty. (Tr. 337). Finally, as discussed above at pp. 16-17, the ALJ considered Plaintiff's medical treatment history and determined that Plaintiff had a history of noncompliance, despite the availability of low-cost and free sources of medication. (Tr. 17, 23).

The ALJ also found many of Plaintiff's allegations credible. For example, the ALJ determined that Plaintiff was not capable of a medium RFC, as the vocational doctors recommended, but was instead only capable of light and sedentary work because Plaintiff's "testimony regarding pain and other symptoms" was unavailable to the consulting vocational doctors. (Tr. 20). The ALJ also recognized that some of Plaintiff's alleged symptoms were in fact consistent with Plaintiff's "medically determinable impairments," but Plaintiff's "statement concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible." (Tr. 23).

It is clear from a review of the record that the ALJ did not make a "conclusory credibility finding" as argued by Plaintiff. Instead, the ALJ considered the entire record before him when the ALJ found Plaintiff's statements "not fully credible." (Tr. 23). Therefore, the Court finds the ALJ's conclusion is supported by substantial evidence.

# IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). Additionally, the Court finds there was no error in the law applied. <u>Hays</u>, 907 F.2d at 1456.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion For Summary Judgment" (Doc. No. 10) is **DENIED**; Defendant's "Motion For Summary Judgment" (Doc.t No. 12) is **GRANTED**; and that the Commissioner's decision is **AFFIRMED**.

Signed: September 30, 2010

Frank D. Whitney
United States District Judge